May it please the Court, Judy Madewell, on behalf of Trevor LaRue, the issue on appeal before the Court is whether the District Court plainly erred in imposing the $5,000 special assessment for the Justice for Victims of Trafficking Act on Mr. Lehew. I would like to refer to the act as the JVTA for purposes of the oral argument. Before I get into the merits of the issue, I need to address whether the appeal waiver in this case bars the appeal. It does not because our challenge, our argument is that imposing the special assessment on an indigent defendant is a sentence in excess of the statutory maximum. The statute that has the JVTA special assessment is at Title 18, United States Code 3014, and it requires the District Court to impose the $5,000 special assessment on any non-indigent defendant. The statute does not authorize the special assessment on an indigent defendant. So our argument is that by imposing it on Mr. Lehew, the District Court imposed a sentence in excess of the statutory maximum. In this Court's restitution cases, it has developed a line of case law on appeal waivers and the impact when a defendant is challenging a sentence as being in excess of the statutory maximum. In those cases, it's an order of restitution. And this Court noted in both the Graves opinion and the Madrid opinion, which are JVTA cases, that the challenges to the JVTA assessment are analogous to the challenges to restitution The Court has held that a appeal waiver does not bar a challenge to a restitution order being in excess of the statutory maximum, even though the defendant agreed in his written plea agreement to pay restitution, even though in that plea agreement he waived his right to appeal the order of restitution, and even though that appeal waiver did not have an for a sentence in excess of the statutory maximum. This Court has held that, and in the Kim case, which is referenced in our briefs, this Court stated that it has recognized two exceptions from the enforcement of a knowing and voluntary appeal waiver, and the second of those is a sentence in excess of the statutory maximum. Because that is the challenge we are raising on appeal, it is not barred by the appeal waiver. Unless the Court has a question for me on the appeal waiver, I will proceed to the merits of the issue. It seems like there's a factual precedent or factual inquiry that precedes whether you get to was the statutory maximum valid or not, and that is whether he was indigent or would be indigent by the time that the assessment would be imposed. How does that affect the appeal waiver? Isn't that just a factual finding one way or the other by the district court? And he waived the appeal of those kinds of factual issues, didn't he? He waived his right to appeal any monetary penalty or obligation. In this case, the statute only allows for the assessment on a non-indigent defendant. So if the defendant is indigent, that's not authorized by the statute. Did he waive his right to appeal whether he's indigent? No. It's not in the plea agreement. And in fact, in the plea agreement, the two times it mentions the $5,000 special assessment, the first time is when the plea agreement sets out the statutory punishments, and it says a $5,000 special assessment. And then later in the agreement, when it talks about the restitution, that he's agreeing to pay restitution, it says as he, something along the lines of as he agrees to pay the $5,000 special assessment, he also agrees to pay restitution. But nowhere in the plea agreement does it say anything about that the statute requires that he be non-indigent for that assessment to be imposed. I want to make sure I understand your argument. Your argument is that because he is indigent and the statute requires that the assessment can only be made against a non-indigent, it's in excess of the statutory maximum. Yes, that is the argument that I'm making. And he didn't waive his right to challenge any assessment that was in excess of the statutory maximum. Not under this Court's case law. The plea agreement doesn't have an exception written in it for a sentence in excess of the statutory maximum. But this Court in both Leal and in Kim said that a sentence in excess of the statutory maximum is an illegal sentence. And so it's not barred by an appeal waiver, even though it doesn't have an exception for a sentence in excess of the statutory maximum. When does the assessment become due and payable? So my understanding, well, it was ordered payable, now I am so sorry I blanked on that, Your Honor. It's payable after he pays his restitution order of 6,300 and he pays the special assessment under 18 U.S.C. 3013. Then it becomes payable. So if he has earnings while he's incarcerated, he got a 35-year sentence, I think. But if he's incarcerated, is he required to begin paying restitution out of those earnings? Yes. So when you are So is the assessment the same as restitution in terms of when he has to begin paying it? Right. So the restitution order says pay in full immediately or pay in $50 a month. Now when a person, he's incarcerated now in the Texas state prison system, he gets out of there in 2039 and then he will start his 35-year federal sentence. When someone is in the Bureau of Prisons, they have the opportunity to participate in the inmate financial responsibility program. Now it's a voluntary program, but if you, and the purpose of that program is not only to have inmates working, but it is for the purpose of having them pay off court-imposed fines, restitution, and costs. But it's voluntary. You don't have to participate, but if you don't participate, there are negative consequences in terms of your living arrangements in the  I also note in the brief that in the inmate, in working in the federal Bureau of Prisons, the main two ways that you can work are Unicor, which is the federal prison industries, which pays higher. It pays about a maximum of $1.15 an hour. But only 8% of all inmates work in that program. It's not available at all the facilities, and there's a waiting list of 25,000 inmates to get into that program. The non-Unicor jobs pay between $0.12 and $0.40 an hour. And the problem with Mr. LaHue, I mean, there's a question of, is someone indigent? If they're indigent and sensing, which Mr. LaHue was, and the only future earnings capability that they have is through working at the BOP, does that make them non-indigent based on that? Well, isn't that a fact question? Didn't the PSR say that we don't think he's going to be indigent by the time this assessment will be imposed, and so therefore we don't think he's indigent. Isn't that a fact question that should have been raised and decided at the sentencing hearing? Your Honor, there is no doubt that there should have been objection at the sentencing hearing on this, and that would have allowed a greater development of the facts in the PSR. But the PSR did not make a finding that he would be non-indigent for purposes of the JVTA. The district, the PSR made no finding as to whether he was non-indigent. It did say he was indigent when it was talking about the fine, but it noted that that was for purposes of getting court-appointed counsel, which this Court has said in its cases is not the same determination for indigency for the JVTA. What the PSR said was that given his financial circumstances, no assets in debt for $14,000, no job since 2017, a determination by the Social Security Administration that he's 70 percent disabled because of his mental health issues. The PSR did say that he couldn't make a fine, pay a fine within the range, but if the Court wanted to impose a minimal fine, that the defendant would have the opportunity to participate in the inmate responsibility program. But in terms of factual determinations at the sentencing, the district court didn't do any analysis with regard to indigency, did it? No, Your Honor. In fact, from the sentencing transcript, it presents very strongly that the Court wasn't even thinking about the JVTA assessment or that it applied in this case. Every time that the Court discussed at sentencing the range of punishment, the statutory and guideline punishment the defendant, Mr. LeHoux, was facing, it never mentioned this special assessment. It wasn't until the end when the Court had actually sentenced him and imposed imprisonment and restitution and the special assessment under 3013 and didn't impose a fine that the prosecutor, after the Court asked the prosecutor, is there anything else that the prosecutor mentioned, the JVTA special assessment, but did not mention that it could only be imposed on the non-indigent. And then the Court just said, I think in one sentence, well, I'm going to make that assessment as well. Yes, Your Honor. But I think the government's going to counter that because the Court adopted the PSR, that there is sufficient analysis in the PSR to conclude that he's... non-indigent. And I believe, and that is going to be the government's argument, at least one of their arguments. And in an unpublished case, this Court did hold that the statute in the Streety case, which is in the briefs, that the statute does not require an express finding and that the district court can impliedly find non-indigency by adopting the pre-sentence report and imposing the special assessment. But in that case, the special assessment was addressed in the PSR, and there was an argument, there were facts in the PSR showing that the defendant was non-indigent. I believe it was in Streety that he had $17,000 and a 401K. We don't have those facts in this case. In fact, I mean, he was indigent at the time of sentencing, and the only... under the PSR, the only way he's going to earn money is in the prison program. He's unique, however, because of his mental illnesses. And his mental illnesses make it... there was that peak psychiatric report because he has suicidal thoughts and has attempted suicide a number of times. And when he was in the psychiatric hospital in 2015, they did a global assessment functioning test on it, which shows how does a person function given their mental illnesses. He scored very low on it, and one of the ways his mental illnesses manifest is in job-related problems. And looking at this is what led the Social Security Administration to determine that he was disabled based on those mental illnesses, and he was receiving disability payments. So we're not talking about the average defendant going into the prison system and being able to take full advantage of this program or the jobs. We're talking about someone who is not functioning well in the free world. In fact, he was honorably discharged from the military because he was deemed unfit to continue service. So our argument is that facts as set out in the record show that he is indigent for purposes of the JVTA special assessment. But even if we don't agree that he's indigent, would you agree that it would be appropriate to remand him for a factual determination about his indigency status? Let's assume we can't agree that... If the court cannot agree that he's indigent, then yes, I think it should be remanded to the district court for a full determination, the basis for the court's determination for imposing the special assessment. What are the real-world consequences if we were to affirm the district court's judgment and he gets to the end of his 35-year sentence and he's indigent? What happens? Your Honor, I don't know. I don't believe... The assessment doesn't go away. I don't know whether he can petition the court. I don't even know if the court has the authority to get rid of the special assessment since it's mandated by statute. Or whether he would have to try and petition the Department of Justice to... When he gets released, he's going to be... If he gets no good conduct time, he's going to be 80. If he gets good conduct time, we're talking mid-70s, late to late 70s. So he may be able to petition the Department of Justice not to collect the assessment. I apologize, I don't know the... Does it come out of social security benefits? What can the assessment... How can it affect him if he's truly indigent? Will it take away... I would assume if he still has to pay, I mean, most of the time, then you're still required whatever income you're getting, you have to pay a portion of that to... You mean like social security and... Yes, if he's eligible. I would assume he's going to be eligible for social security. I don't know if he's going to be eligible for disability. Disability, it stops when you're incarcerated for the entire time you're incarcerated. Once you get out of incarceration, my understanding is you have to reapply to be determined to be disabled. Unless the court has any further questions? I ask the court to vacate the special assessment and remand to the district court for resentencing without it, or should the court not agree to do that, to remand for resentencing? Thank you. Good morning. May it please the court. Joseph Gay on behalf of the United States. I'd like to begin by addressing Judge Richman's question. The obligation will continue for 20 years after his release from custody, and that's set out in the Madrid opinion of this court. He will have a continuing obligation to pay those amounts through his entire term of imprisonment and an additional 20 years thereafter. In this case, as Judge Gray has recognized, there is language in the PSR that specifically says the appellant will have an opportunity to participate in the Bureau of Prisons Inmate Financial Responsibility Program, which will allow him the opportunity to make monthly payments toward his fine or other court-imposed cost based on institutional earnings or community resources. So one of the things that happens is that over a period of someone's life, family members contribute money, people pass away, there are inheritances, estates, all sorts of things, which basically is the reason why this court has held that indigency is not a fixed point. It is a continuing point, in the sense that, yes, he was indigent at the time he was sentenced, but over the course of his 420-month federal sentence, after he completes his state sentence, there are significant lifetime events that can take place, as well as earnings. The idea that, for example, the $5,000, 420 months, $11.90 a month would be the... What evidence is there in this record that there was any attention given to or any discussion of his status as an indigent? There is not, Your Honor. No. That's the bottom line. It's not discussed, but as... And the statute requires that the assessment cannot be imposed. That is correct. Except as to a non-indigent. Yes, but we are on plain error. This was brought up in open court. There was no objection. And that ties back into the plea agreement. He absolutely agreed to pay the monetary penalty. The JVTA is expressly mentioned in the plea agreement. This is not some situation where the defendant had no idea that he was going to get hit with some condition that he never had an opportunity to object to. Under plain error, the district court was deprived of an opportunity to know that there was going to be an issue regarding non-indigency. And so the idea that plain error basically looks at whether there is a basis in the record. I would assert the PSR provides that basis. The district court implicitly adopted the sentence report of sentencing and expressly adopted it in its statement of reasons. So under those circumstances, I believe that under plain error, the defendant cannot meet his burden of showing that his substantial rights were violated. I would go one step further and say that Madrid, an opinion of this court that the parties cite, talks about the spirit of the plea agreement and the waiver of appeal. If you read the plea agreement in its entirety, the spirit is that he understands there's going to be monetary penalties and that he's agreeing to pay them as part of the agreement that he would get only 420 months. This is an egregious factual case. His exposure was up to life. And at this point, and other counts were dismissed, it was part of the bargain that he agreed to. So to sit at sentencing, not object, and now on appeal basically say, well, the record's devoid of any express consideration, well, there is evidence in the record that he may have an ability to pay, which is all that really is required under this court's indigency precedence, which basically say it's not a fixed point. It continues over the lifetime. Why would there ever be, why would any district court ever say, well, you may be indigent now, but if you have a prison term that's long enough, you're going to have an opportunity to pay this assessment. So are you saying that district courts can say, make a future prediction as to indigency when they make this assessment, and the statute permits that? The court can make a finding, and so there are assessments, monetary penalties, fines, different sorts of financial obligations that can arise. And a district court can make a finding that no fine will be imposed based on, so those are decided immediately, right then at sentencing. Restitution and assessments, however, are something that basically are envisioned to take place over a longer period of time. So there is a distinction, I think, between fines, things that basically are assessed at that moment, and things that are statutorily required, such as this $5,000 assessment. And so if the district court were to make a finding that the defendant was indigent and did not apply the $5,000 assessment for that reason, I do not believe that would be an error. I think the court could clearly do that. On the other hand, the court could look at the factors and determine, well, over the lifetime, given the length of the sentence, given all the effects that can take place, indigency is not a fixed point, and find that the defendant was non-indigent in terms of the assessments and restitution going forward over the period of his remaining incarceration, in this case, 20 years thereafter. Okay. So in this case, what evidence is there that given his mental capacity, he would in fact earn enough money to pay this off? Well, that's exactly the problem, Your Honor, and that's why plain error exists. So when an objection is not made and a district court does not have an opportunity to develop the record, this court has the opportunity to send it back for a limited remand to allow this to be developed and whether in fact the defendant is so basically to look at the facts and circumstances and determine whether the district court believes he should be found non-indigent going forward. You're saying we should do a limited remand? I'm saying that that is an option for the court. I would suggest that under plain error that you don't need to get that far. And finally, I would say that under the fourth prong of plain error, that there is no reason for this court to do that. As you pointed out, Judge Richman, what is the practical impact of all of this? We'll find out in a very long period of time. And at the end of the day, the defendant will make what restitution and what payments he can. And as it's set up right now, that's the way the judgment is. And I think there are no compelling judicial reasons to exercise your discretion to notice the error. And that's what the fourth prong allows this court to do. In the alternative, you certainly could do a limited remand to allow the district court the opportunity to develop this record. But at the end of the day, whether he has the ability to pay, there is evidence in the record that he may be able to pay over his period of incarceration. And that's what we are relying on in this case. Well, let's say that it was litigated in the district court. He said, I'm indigent. The facts are what they are. And the district court said, well, because he may be able to pay, I'm going to find he's not indigent. That goes up on appeal. Is there enough evidence to support a finding of may? Under a clearly erroneous standard, I would suggest that that would be upheld. Because whether this court disagrees with the district court is not really the standard. The standard is whether there is a plausible basis in the record for the district court's finding. And unless this court were willing to hold as a matter of law that it would never be enough, I think under a clear error standard of review for preserved error, which is very deferential to the district court, and then of course we're under plain error here. But I do think that depending on the record and the evidence before this court, it may be subject, I think there's a strong argument that it wouldn't be clearly erroneous if there is an articulable basis from the record to find that the defendant was not indigent. If there are no further questions, I'll yield back my time. Thank you very much. If I may just briefly reply. Mr. Gay argues that he mentioned the language of the possibility of a windfall or inheritance in the future as being considered, determining that Mr. LeHoux is nonindigent for the JVTA special assessment. So that exact language comes from the restitution hearing, when they're talking about the restitution amount, the 6,300, how it's going to be paid. And the district court says it's either payable, the normal way we do it is it's payable immediately, or $50 a month, but if he has some kind of windfall or inheritance, then he'll pay it all, instead of going through the payment plan. Restitution, in this case, was under the Mandatory Victims Restitution Act, which is Section 3663, Big A. And restitution is not only mandatory, the statute specifically says that the court cannot consider the defendant's ability to pay. So in that case, the idea of a windfall, the court can consider that, because it has to impose restitution in the amount of the victim's losses, and it cannot consider the defendant's ability to pay. The JVTA special assessment only applies after the court has considered the defendant's ability to pay and found that he can. In the future, as well, as this court has said, that we look, that the district court needs to look at at the time of sentencing, and also future earning capability. But I believe that under the government's argument, it's essentially going to write the requirement of non-indigency out of the statute, because in this case in particular, there are real questions. I don't think it's proper to consider a windfall or restitution in the absence of evidence that that's likely to happen. You know, in fact, the inmate responsibility, there were changes made to the inmate financial responsibility program because of wealthy white-collar defendants who were coming in with a lot of money, and they were putting it in their commissary accounts and refusing to participate in the program. So there was an increase in how are we going to get the money out of people. That's not a, so there you might have a case where there's evidence there could be a windfall. But that's not the case here. And so I do think we have to be concerned about writing the requirement of the, out of the statute, particularly also with the idea that a court doesn't need to make an express finding. It can impliedly find it by adopting the pre-sentence report. Opposing counsel just said, you know, even if this were to go back and, or a case similar to this were before the district court and there was a discussion but there was no evidence, if the court said, I find the defendant to be non-indigent, that wouldn't be clear error. So there has to be some point where there is an actual determination of non-indigency based on facts. Unless there are any further questions, thank you very much.